THE FIRST NATIONAL BANK OF CREEDE v. MINER ET AL.

1. TRUST DEEDS—IMMATERIAL ALTERATIONS.

M. borrowed $4,200 and executed a note to the lender for that sum, with S. as joint maker. To secure the payment of the note, M. executed a deed of trust in the usual form, but reciting that S. was surety only, and that he had agreed to become surety in like manner upon a new note extending said note for ninety days. The note matured and it was replaced by another for ninety days, signed by M. and S. When the latter fell due, a payment was made by M. reducing the amount due thereon to $3,536, and a sixty day note for that sum was given by M. and S. in lieu of the second note, and these words, "Said Shimer agrees to become surety in like manner upon a new note extending said second note sixty days longer, amounting to $3,536," were inserted in the deed of trust. *Held*, that the interpolation, whether made by consent of the parties or not, was immaterial, S. having already become such surety.

2. APPELLATE PRACTICE.

Questions of fact which the trial court refused to decide will not be considered on appeal.

3. TRUST DEEDS—EVIDENCE.

The purpose for which a deed of trust was given must be found in the deed itself. Extrinsic evidence of some intention different from that expressed cannot be received.

4. SAME—PAYMENT.

A note secured by a deed of trust is not paid by the giving of another
    in lieu thereof.  It is the debt which is secured, and, regardless of
    how many renewals there may have been of the original note, the
    security remains for the benefit of the owner of the debt.

5. SAME—RELEASE.

A release of a deed of trust given to secure the payment of a debt can
    be authorized only by the holder of the debt.  Without such au-
    thority, a release by the trustee is void.

*Error to the District Court of Weld County.*

Mr. T. E. WATTERS and Mr. H. N. HAYNES, for appel-
lant.

Mr. JAMES E. GARRIGUES and Mr. JAMES C. SCOTT, for
appellees.

THOMSON, P. J., delivered the opinion of the court.

On the 23d day of November, 1892, William A. Miner bor-
rowed $4,200 from the First National Bank of Creede, and
executed a note to the bank for that amount, with Frank
Shimer as joint maker.  As between Miner and Shimer the
latter was a surety.  On the same day Miner executed a trust
deed, conveying certain real estate in the city of Greeley to
Warren M. Morse as trustee, the material portions of which,
as it appeared when introduced in evidence, are as follows:

" This indenture, made this twenty-third day of December,
in the year of our Lord, one thousand eight hundred and
ninety-two, between William A. Miner, of the county of Weld
and state of Colorado, party of the first part, and Warren M.
Morse, of Weld county, Colorado, party of the second part,
witnesseth: That whereas the said William A. Miner has
executed his promissory note bearing even date herewith,
payable to the order of the First National Bank of Creede,
Colorado, ninety days after the date thereof, for the principal
sum of $4,200, with interest thereon from maturity at one
and one half per cent per month, which said note was also

executed by Frank Shimer, of Arapahoe county, Colorado, nominally as a joint maker thereof, but in fact as surety only, the said Miner being the actual principal maker of said note, and said Shimer has also agreed to become surety in like manner upon a new note extending said first note for ninety days longer (*said Shimer has also agreed to become surety in like manner upon a new note extending said second note for sixty days longer amounting to $3,536*), and whereas the said William A. Miner is desirous of securing not only the prompt payment of said promissory notes, but also of effectually securing and indemnifying the said Frank Shimer for his said suretyship, and to save him harmless as against any and all liability on account thereof, and on account of either of said notes aforesaid ; Now, therefore, the said party of the first part in consideration of the premises, and for the purpose aforesaid, and in the further consideration of one dollar to him in hand paid by the said party of the second part, the receipt whereof is hereby confessed, has, and hereby does, grant, bargain, sell and convey unto the said party of the second part, his heirs, assigns and successors in trust, forever, all the premises situated in the county of Weld and state of Colorado, known and described as follows, to wit: * * * , to have and to hold the same, together with all and singular the privileges and appurtenances thereunto belonging ; in trust, nevertheless, that in case of default of payment of said note by said William A. Miner, or any part thereof, or the interest thereon, according to the tenor and effect of said notes, then it shall and may be lawful for said party of the second part, his heirs, assigns, or successors in trust, to sell and dispose of the said premises, and all the right, title, benefit and equity of redemption of said party of the first part, his heirs or assigns therein, * * * , and out of the proceeds or avails of such sale, and purchase money paid thereon, after first paying all costs of advertising and sale, commissions, and all other expenses of this trust, * * * , to pay the principal and interest due on said notes according to the tenor and effect thereof,

rendering the overplus (if any) unto the said party of the first part, his legal representatives or assigns."

The italicized words in parentheses were not in the deed when it was subscribed and acknowledged, but were inserted afterwards.

The bank caused this deed to be recorded in the office of the recorder of Weld county on the 29th day of June, 1893. When the note became due it was replaced by a new note executed by Miner and Shimer for a further period of ninety days; and when the latter note matured, the amount due upon it was reduced by a payment made by Miner to $3,536, and another note for that sum, signed by Miner and Shimer, given in lieu of it. It was after the execution of this last note that the words, "Said Shimer agrees to become surety in like manner upon a new note extending said second note for sixty days longer, amounting to $3,536," were written in the deed. Mr. Black, the plaintiff's cashier, testified that when the note was given he exacted a new trust deed to secure it, and that the interpolation was made by him at the request of Mr. Miner, in the presence of Mr. Shimer, to save the trouble of executing a new deed. This statement was, however, contradicted by Miner and Shimer. On the 31st day of March, 1893, Shimer assigned in writing to the bank all his right, title and interest in and to the trust deed. How the assignment happened to be made, or what was its purpose, does not appear. On July 1, 1893, Miner executed a trust deed, conveying the same property to Bruce J. Johnson, as trustee, to secure the payment to the Union Bank of Greeley of an indebtedness of $3,200, and on the 21st day of August, 1893, Morse executed a release of the trust deed first mentioned, which release was duly recorded on the 24th day of August, 1893. On March 19, 1894, Miner executed a trust deed to Samuel B. Wright, as trustee, to secure an indebtedness to Jonas Bronk of $6,000.

The First National Bank of Creede brought this action against Miner, Shimer, Morse, Johnson, the Union Bank of Greeley, Wright and Bronk, praying that the release of the

trust deed to Morse be set aside and canceled, that the lien of that deed be adjudged prior and superior to the liens of the other trust deeds, and that its foreclosure be decreed in pursuance of its terms. The answer denied that the trust deed claimed by the plaintiffs was executed for the purpose of securing Miner's indebtedness to the bank; averred that the sole purpose of the deed was to indemnify Shimer against liability as surety; and set up the alteration of the deed, which was alleged to have been wrongfully made without the consent of Miner or Shimer. The answer contained some other denials and averments, which, for reasons to be given hereafter, it is not necessary to notice.

The court declined to pass upon any of the questions of fact raised by the pleadings and evidence, and decided the case in favor of the defendants solely upon its construction of the trust deed. It mentioned the alteration in the instrument, and indicated its belief from the evidence that the position of the defendants in regard to that could not be sustained. Before passing to the question upon the disposition of which our decision must turn, it may be well to say that the alteration, whether made with the consent of parties or not, was, when we consider the time when it was made, entirely immaterial. If allowed to stand, no person could be injured, or any right affected, one way or another, by it. It purported to bind Shimer to become surety upon the note for $3,536. But he had already become such surety. He had signed the note, and it was in the plaintiff's possession, before the words were inserted. Such being the case, they were absolutely meaningless, and could have no effect upon the instrument, or upon the rights of any party connected with it.

There were several other questions of fact raised upon the pleadings and evidence, which are the subject of considerable argument, and the disposition of which upon another trial may affect the plaintiff's right to a decree; but as the court refused to decide any of them, they are not properly before us. Ordinarily, we are bound by the findings of fact

of the trial court, but where there are questions in a case upon which that court makes no findings, they must remain open here. The trial of causes is not within our jurisdiction.

We shall, therefore, proceed to an examination of the ground upon which the court expressly based its judgment. That ground was that the trust deed was given for the sole purpose of protecting Shimer against loss on account of his suretyship. What the purpose of the deed was must be found in itself. Extrinsic evidence of some intention different from that which it expressed cannot be received; but although there was some proof attempted in that direction, the court, in reaching its conclusion, did not undertake to go outside the language of the instrument itself. Therefore the only question before us is whether the court interpreted that language correctly.

The express purpose of the deed was, first, to secure the payment of the note; and, second, to indemnify Shimer as surety, and save him harmless from personal liability upon the note. It authorized a sale of the property by the trustee in case of default in payment of the note, and provided for the application of the proceeds, less expenses, upon the note. If the note, or rather the debt which it evidenced, was paid, no right in the trust deed would ever vest in Shimer. If the note was not paid, and the bank undertook to hold him personally liable, then he might cause the property to be sold, and the proceeds turned over to the bank; but he could not foreclose for himself, unless he had first paid the bank the amount due to it. Primarily, the trust deed was given as security for the debt to the bank. The right in it which Shimer had was secondary and contingent. The bank, as the owner of the indebtedness, was also the owner of the security. In this case there were two securities, the land and Shimer, and the bank might pursue either, resorting to the other for whatever the first failed to yield.

It is immaterial how many renewals there were of the original note. A note is simply evidence of a debt. It was the debt which was secured. Giving one note in lieu of

another is not a payment of the debt. The several renewal notes evidenced the same debt, and until that was paid the security remained in force for the benefit of the owner of the debt.

The release executed by Morse recited that W. A. Miner had fully paid and satisfied the original note. This recital was not true. He had replaced the note by another, but had not paid it. At the time the release was written it was unpaid, and it is still unpaid. The release also recited that it was made at the request of Frank Shimer. Shimer had no authority to order a release. As he had not paid the debt, the security did not belong to him. Its release could be legally authorized only by the bank, the holder of the debt; and the paper did not purport to be executed by its authority. Without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void. The mortgage to the Union Bank of Greeley was executed before this supposed release was made; but even if it had been executed subsequently, as was the case with the mortgage to Bronk, the recital in the releasing instrument that it was executed at Shimer's instance, and the absence of any appearance of authority from the owner of the debt, would have made it its duty to inquire into the facts, if it intended its mortgage to be a prior lien.

The judgment below, being based on an erroneous construction of the deed, must be reversed.

*Reversed.*

WILSON, J., not sitting.